UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| RAHMAT LEGHARI, | ) |
|                 Plaintiff, | ) |
| v. | ) Cause No. 1:19-CV-360 |
| ROBERT WILKIE, Jr.[1] | ) |
| Secretary of Veterans Affairs, | ) |
|                 Defendant. | ) |

**OPINION AND ORDER**

*Pro se* Plaintiff Rahmat Leghari, MD (Dr. Leghari) was Chief of Staff for the VA's Northern Indiana Health Care System (NIHCS) from June 2010 until he voluntarily retired on May 16, 2011. Despite being placed on a Performance Improvement Plan (PIP) by his supervisor for performance issues, the VA never disciplined Dr. Leghari or threatened him with termination. Still, Dr. Leghari maintains that his placement on the PIP and his concern that older non-white workers were being discharged for budgetary reasons forced him into retirement. After exhausting the administrative process, he filed suit in this Court alleging age discrimination under the Age Discrimination Employment Act, (ADEA), 29 U.S.C.A. § 623, *et seq.* and national origin discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, *et seq*.

Before the Court is the defendant's Motion for Summary Judgment. (ECF No. 28). Despite being advised of his obligation to respond, the plaintiff failed to do so. Because the Court finds no genuine issues of material fact preclude summary judgment, the Court GRANTS the Motion for Summary Judgment.

---

[1] At the time the case was filed, Denis Richard McDonough was the Secretary of Veterans Affairs.

1

## FACTUAL BACKGROUND

### a. Plaintiff's Background and Employment Information

Dr. Leghari, a Pakistani national, was born in December 1948. (ECF No. 29-2 at 5). He attended medical school in Pakistan and eventually migrated to the United States where he received additional medical training. Dr. Leghari has a long employment history with the VA, having held multiple positions from 1983 and continuing through his retirement in May 2011.

In June 2010, Plaintiff relocated to Fort Wayne, Indiana to work as Chief of Staff for the VA at NIHCS. (ECF No. 29-3, Leghari Dep. at 94).

Dr. Leghari started in his new position the same day Daniel Hendee (Hendee) started as Director of the NIHCS. (Leghari Dep. at 94). Hendee was Dr. Leghari's supervisor from June 10, 2010, to May 16, 2011. (ECF No. 29-5, Hendee Aff. Question/Answer No. 2; *Id*. at 122).

### b. Chief of Staff Duties and NIHCS Meetings

As Chief of Staff, Dr. Leghari's responsibilities extended to two campuses (Fort Wayne and Marion, Indiana) as well to community-based clinics in Goshen, Kokomo, South Bend, and Muncie, Indiana. The Chief of Staff role is "highly complex" as it provides, "oversight and guidance to all clinical staff as they deliver quality care." (Leghari Dep. at 412). Dr. Leghari further described the Chief of Staff's role in this way:

> they are supposedly doing monitoring of a lot of complex activities happening in medical center and various areas, both in inpatient and outpatient areas. As part of that work, they have to meet with their front-line staff, with their subordinates, their direct reports, and they also have to manage a lot of committees- They have to participate in a lot of managerial bodies, in terms of quality council, resource boards, and they also interact with the key leadership at the medical center and some daily activities which are in the form of morning reports and same of the daily infractions which are structured in there. So, it's a very broad role but a lot of activities.

(*Id*.).

As Chief of Staff, Dr. Leghari was one of the senior leaders and part of the Executive Leadership Team. (*Id*. at 101); (ECF No. 29-7, Chief of Staff Position Description). Around 10-12 chiefs of various departments reported to Dr. Leghari. (ECF No. 29-6, Hendee Dep. at 141, 143).

Hendee conducted a weekly Monday morning directors' meeting with the leadership team. (Leghari Dep. at 114). According to Dr. Leghari these meetings were longer than similar meetings held in other locations where he had worked and focused mainly on budget issues. (*Id*. at 126-127, 138). Dr. Leghari attended 70-80% of the Monday meetings. (*Id*. at 139). For the most part, Hendee agrees that he had many discussions about managing the budget better as it was a central issue for NIHCS. (Hendee Dep. at 99). Even so, Hendee did not discuss reductions in force because, in his view, balancing the medical center budget through reduced staffing would not have fixed the extensive budget issues. (Hendee Aff. Question/Answer No. 18).

   c. ***Staffing Departures by employees over 40 years old***

From June 2010 through December 2010, two employees at NIHCS over age 40 were asked to leave their positions at NIHCS. In late July or August 2010, Hendee and Dr. Leghari asked Dr. Gardner, the Chief of Surgery, to leave NIHCS due to concerns about surgical procedures he performed. Dr. Gardner was a white male in his 50's. (Hendee Dep. at 147-148).

Likewise, in Fall 2010, Hendee informed Jay Vandermark, the Chief of the Fiscal Office, and a white male over 40, that he could not stay in his position given the serious issues in the projected budget that occurred during his tenure. Hendee offered to transfer Vandermark to another position, but Vandermark opted to voluntarily retire. Vandermark was replaced by a white female. (Hendee Dep. at 173, 189).

   d. ***Hendee's Issues with Dr. Leghari's Performance***

3

Sometime before November 2010, Hendee began having issues with Dr. Leghari's performance as Chief of Staff. In November 2010, Hendee introduced Dr. Leghari to a mentor, Wendy Brown, Chief of Staff in Chicago, Illinois, who he hoped would provide guidance to Dr. Leghari. (Leghari Dep. at 110-118). This failed. Dr. Leghari met with Dr. Brown while attending the VA's Chief of Staff one-week mandatory training in December 2010 but did not communicate with her after the training. (*Id*. at 119).

On January 3, 2011, Hendee and Dr. Leghari reviewed together the Performance Work Plan (PWP) for the fiscal year period of October 1, 2010, through September 30, 2011.  (Leghari Dep. at 141-142, 144, 310-311; ECF No. 29-9, PWP). On this same date, Hendee reviewed Dr. Leghari's performance for the rating period of June 6, 2010, through September 30, 2010, and rated him "fully successful." (Leghari Dep. at 150, 312-313). This performance evaluation included a typed page that noted a couple of Dr. Leghari's "noteworthy performances." (PWP at 9). The evaluation also included a section labeled "Areas of Concern and/or Identified for Improvement." (Leghari Dep. at 122-142; PWP at 5). Hendee noted areas that Plaintiff needed to improve, including a lack of participation/engagement, failure to address some clinical issues, and lack of connectivity. (Leghari Dep. at 141; PWP at 4). Hendee reviewed these areas line by line during their meeting on January 3, 2011. (Leghari Dep. at 346; PWP at 4). Dr. Leghari signed the performance evaluation and checked the box stating, "concur with and approve initial rating." (Leghari Dep. at 144; PWP at 3). Additionally, the areas that were discussed on January 3, 2011, were memorialized in a memorandum dated January 10, 2011. (PWP at 5-6).

On April 6, 2011, Hendee again spoke to Dr. Leghari about issues with his work and placed him on a 90-day Performance Improvement Plan ("PIP"). (Leghari Dep. at 181- 184; ECF No. 29-10, PIP). Hendee noted that Plaintiff needed to be more active, particularly during morning

4

meetings. Hendee believed Dr. Leghari was not addressing the performance deficiencies of his subordinates, particularly issues with the Chiefs of Social Work and Geriatric Extended Care and Mental Health. (Leghari Dep. at 314, 344-347; PIP). In Hendee's view, when clinical issues would emerge Dr. Leghari failed to intervene. (*Id*. at 313-314). Further, Dr. Leghari failed to engage with the staff and did not address their problems. (*Id*.; PIP).

Hendee stated that he designed the PIP to resolve these concerns. He wanted to work through the issues with Dr. Leghari, to avoid having to recruit a new Chief of Staff. (Leghari Dep. at 308). Dr. Leghari acknowledged receipt of the PIP and stated he would respond in writing. (PIP). Under the PIP, Dr. Leghari was given until July 6, 2011, to resolve the issues in the PIP and show acceptable performance. (*Id*.)

The record reflects that Hendee met regularly with Dr. Leghari to discuss his progression through the PIP. Hendee met with Dr. Leghari on April 18, 2011, April 28, 2011, and May 4, 2011, to discuss his performance progress . (Leghari Dep. at 348, 356-357; ECF No. 29-11, April 27 Memo; ECF No. 29-13, May 4 Memo). During the performance meeting on May 9, 2011, Hendee informed Dr. Leghari that significant performance issues continued, including unsigned progress reports and little progress on morning report meetings. (Leghari Dep. at 259-262). Hendee also informed Dr. Leghari that he received complaints from others at the VA about his performance. (*Id*. at 261). Despite his ongoing performance issues, Dr. Leghari was never disciplined while at NIHCS and Hendee continued to work with him to resolve the issues noted in the PIP.

e. *Dr. Leghari's Retirement*

On May 16, 2011, before completion of his 90-day PIP, Dr. Leghari emailed Hendee and copied other managers informing them that he was "…voluntarily retiring today, May 16, 2011." (Leghari Dep. at 262-263; ECF No. 29-16). Plaintiff also completed and submitted to the VA his

Application for Immediate Retirement. (Leghari Dep. at 264; ECF No. 29-17). Plaintiff specified on the form that he was requesting "voluntary" retirement. (*Id*.) Plaintiff retired at 62 years old.

At the time of his retirement, Dr. Leghari still had nearly 8 weeks to improve his performance. Hendee did not ask Dr. Leghari to retire or resign from his position. (Hendee Aff. Question/Answer No.14). Hendee never spoke with Dr. Leghari about retirement or resignation. (*Id*. at No. 13) Hendee never talked to Dr. Leghari about termination. (Hendee' Dep. at 174). In fact, Hendee was surprised by Dr. Leghari's notice that he would retire. (Hendee Aff. Question/Answer No.11).

After Plaintiff retired, Dr. Ajay Dhawan replaced him as Chief of Staff at the same salary. (*Id*. at No. 133, 135, 374-375). Dr. Dhawan was in his 50s and of Indian nationality. (Hendee's Dep. at 134).

*f.   Administrative Proceedings*

On May 31, 2011, Dr. Leghari filed a formal EEOC complaint alleging discrimination based on Hendee's action of placing him on a PIP and because he believed he was forced to retire. The EEOC dismissed his claim for the PIP and permitted his forced retirement claim to proceed. After a hearing before an Administrative Law Judge (ALJ), the ALJ found for the VA and judgment was entered. Plaintiff appealed the decision to the Office of Federal Operations (OFO) to no avail and sought reconsideration of its decision. On May 15, 2019, the EEOC Office of Federal Operations affirmed its decision. Plaintiff then filed suit in this court.

## DISCUSSION

### A.   Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). The movant bears the initial responsibility of informing the district court of the basis of its motion and identifying those portions of designated evidence that show the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotation marks and citation omitted).

A factual issue is material only if resolving the factual issue might change the outcome of the case under the governing law. *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992). A factual issue is genuine only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party on the evidence presented. *See Anderson*, 477 U.S. at 248. In deciding a motion for summary judgment, the court "may not 'assess the credibility of witnesses, choose between competing reasonable inferences, or balance the relative weight of conflicting evidence.'" *Bassett v. I.C. Sys., Inc.*, 715 F. Supp. 2d 803, 808 (N.D. Ill. 2010) (quoting *Stokes v. Bd. of Educ. of the City of Chi.*, 599 F.3d 617, 619 (7th Cir. 2010)). Instead, it must view all the evidence in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party. *See Anderson*, 477 U.S. at 255.

***B. Analysis***

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual … with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The ADEA also instructs that it is unlawful for an employer to "fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his

compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C § 623(a)(1).

Dr. Leghari contends that he was forced into retirement because of both age and national origin discrimination at the VA. To succeed on his claims, he may present either direct or circumstantial evidence that the Defendants took the challenged job action against him because of his age, national origin or both. Without direct evidence, a plaintiff may proceed under the *McDonnell Douglas* burden-shifting approach. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 (1973). To present a prima facie case, a plaintiff must come forward with evidence that: (1) he is a member of a class protected by the [relevant] statute, (2) he met the defendant's legitimate job expectations, (3) he has been the subject of some form of adverse employment action, and (4) that the employer took this adverse action on account of his membership in the protected class. *See Chaib v. Geo Grp., Inc.*, 819 F.3d 337, 342 (7th Cir. 2016). If the plaintiff establishes a prima facie case of discrimination, "the burden shifts to the employer to offer a nondiscriminatory motive, and, if the employer does so, the burden shifts back to the plaintiff to show that the employer's stated reason was a pretext." *Purtue v. Wis. Dep't of Corr.*, 963 F.3d 598, 601–02 (7th Cir. 2020). No matter how a plaintiff chooses to proceed, the basic question at the summary-judgment stage is whether the evidence as a whole would allow a reasonable jury to find that he suffered an adverse job action because of a prohibited reason. *Id.*; *see also Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016).

Without any response brief from Dr. Leghari, he has adopted no method of analysis for his claims. Thus, the Court follows the VA's lead in analyzing his claims. The VA argues that Dr. Leghari has not offered any direct evidence of discrimination and that he cannot meet his burden

under *McDonnell-Douglas* to offer a prima facie case of age or national origin discrimination. The Court agrees.

As for any direct evidence, the record does not reveal any evidence that would permit a direct link between any adverse decision by the VA and Dr. Leghari's age or national origin. Direct evidence is evidence which, if believed, proves the fact of discriminatory animus without inference or presumptions. *See Morgan v. SVT, LLC*, 724 F.3d 990, 995 (7th Cir. 2013) (direct evidence explicitly links an adverse employment action to an employer's discriminatory animus). Far from establishing a direct nexus between his protected characteristics and his retirement, Dr. Leghari believes and repeatedly asserted in his deposition that budget issues affected the VA's decision-making. He argued that the VA's budget crisis motivated the VA to target older non-white employees for termination. But the record altogether fails to support his speculation, nor does he have any evidence that a reasonable jury could interpret as an express acknowledgment by Hendee that he purposely targeted older, non-white employees to resolve budget issues in the VA. Thus, the Court agrees with the VA that no direct evidence of discrimination exists.

Dr. Leghari fairs no better under the indirect method of proof, as his claims fail as a matter of law almost as soon as they begin. The VA agrees that Dr. Leghari is a member of a protected class but argues that he cannot satisfy the other three prongs of the prima facie case for either of his claims. Because summary judgment is appropriate if Dr. Leghari cannot show any one element of the prima facie case, *see Lewis v. City of Chicago,* 496 F.3d 645, 652 (7th Cir. 2007), the Court need only address the third prong, an obvious loser on this record.

The VA emphasizes that Dr. Leghari has not shown he faced any adverse employment decision as the VA did not discipline or terminate him. As the VA points out, there are only two plausible theories from which Dr. Leghari could assert he was subject to an adverse employment

9

decision. First is the performance evaluation which led to his placement on the PIP. But the Seventh Circuit has strongly suggested that a PIP will rarely — if ever — be an adverse employment action on its own. *Smart v. Ball State Univ.*, 89 F.3d 437, 442 (7th Cir. 1996) ("[Plaintiff] has not identified, nor have we discovered, a single case where adverse performance ratings alone were found to constitute adverse action."). That said, where a reasonable jury could conclude that a PIP imposed new conditions on plaintiff's employment, placement on a PIP may constitute an adverse action. *See Preston v. Eli Lilly and Co.,* 2021 WL 5412534 (S.D. Ind. October 5, 2021). But Dr. Leghari alleges no new employment conditions as a result of the PIP and the PIP on its face does not impose any. Thus, the Court agrees that the PIP cannot spearhead an adverse employment action in this context.

Second, in some cases, a claim by an employee that his working conditions were so intolerable that he was forced to resign, may be synonymous with a discharge and thus considered an adverse employment action. *Pa. State Police v. Suders,* 542 U.S. 129, 141 (2004) ("an employee's reasonable decision to resign because of unendurable working conditions is assimilated to a formal discharge for remedial purposes."). Dr. Leghari contends that he was forced to retire because of his treatment at the VA. But the Court is at a loss to conclude what exactly that treatment might have been.

The hallmark of a constructive discharge claim is that a plaintiff's working conditions, from the standpoint of a reasonable employee, had become unbearable. *Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673 (7th Cir. 2010). The Seventh Circuit recognizes two forms of constructive discharge that can satisfy the adverse employment element. "The first occurs when a plaintiff resigns due to discriminatory working conditions even more egregious than that required for a hostile work environment claim. ... The second occurs when an employer acts in a manner

that would make clear to a reasonable employee that she will be immediately fired if she does not resign." *Fields v. Bd. of Educ. of City of Chicago,* 928 F.3d 622, 625 (7th Cir. 2019).

Addressing each theory in turn, Plaintiff first fails to establish constructive discharge under a theory of discriminatory working conditions. Dr. Leghari makes passing references in his deposition to Hendee allegedly insulting managers in weekly meetings and, in his EEO Affidavit, he stated his fear that Hendee would "abuse his power" and terminate him at the end of the PIP. Yet what is missing is any specific evidence about the content and nature of Hendee's alleged insults, whether they were directed at Plaintiff, whether they were based on his age or national origin, or were repeated so regularly that Hendee made the workplace intolerable for Dr. Leghari to continue his employment there. Indeed, even if the Court takes Dr. Leghari's assertions in the aggregate and construes them generously, such vague and sporadic allegations would not meet the lower threshold of a hostile work environment. *Whittaker v. N. Illinois Univ.,* 424 F.3d 640, 648-49 (7th Cir. 2005) ("Because, as we have already found, [plaintiff] has failed to show work conditions so egregious as to meet the stringent hostile work environment standard, she certainly cannot reach the even higher threshold required to show a constructive discharge."). As a result, no reasonable factfinder could conclude that Plaintiff was constructively discharged because of discriminatory working conditions.

Similarly, Dr. Leghari cannot show that he was constructively discharged due to the threat of imminent termination or that based on the VA's actions, "the handwriting [was] on the wall and the axe was about to fall." *Fischer v. Avanade, Inc.,* 519 F.3d 393, 409 (7th Cir. 2008). "For a retirement or resignation to rise to the level of a constructive discharge, it must be clear to a reasonable employee that an actual firing was 'imminent and inevitable.'" *Chapin*, 621 F.3d at 680. Plaintiffs are normally required to remain employed while seeking redress, and for this reason,

a hypothetical adverse action that is never realized is not considered an adverse employment action. *See Chapin*, 621 F.3d at 679 ("[a] working condition does not become intolerable or unbearable merely because the prospect of discharge lurks in the background"); *Cigan v. Chippewa Falls Sch. Dist.*, 388 F.3d 331, 333-34 (7th Cir. 2004) (speculation as to firing is "a poor substitute for the actual results of real deliberation within the employer's hierarchy"); *Wright v. Ill. Dep't. of Child. and Family Servs.*, 798 F.3d 513, 531 (7th Cir. 2015) ("That Ms. Wright *may* have been discharged at the conclusion of the disciplinary proceeding does not amount to constructive discharge").

The record lacks evidence that Hendee communicated to Dr. Leghari that had he not retired or resigned, termination was a forgone conclusion. In fact, Dr. Leghari still had 8 weeks remaining on his PIP when he submitted his voluntary retirement form. He points to nothing suggesting that Hendee threatened him with discharge or that his termination was inevitable. Rather, all the evidence produced suggests the opposite; Hendee was regularly meeting with Dr. Leghari to remediate the problems he saw with Dr. Leghari's performance to *keep* him in the job. In short, Dr. Leghari has produced no evidence from which a jury could conclude that he was forced to retire to avoid an impending termination.

Having considered the entire record, viewing the evidence as a whole, with and without the lens of *McDonnell-Douglas,* Dr. Leghari cannot establish discrimination under either the ADEA or Title VII. No reasonable jury could conclude that Dr. Leghari suffered an adverse action for a prohibited reason. There is no triable issue of fact and summary judgment is granted in favor of the VA.

## **CONCLUSION**

Based on the reasoning above, the defendant's Motion for Summary Judgment (ECF No. 28) is GRANTED. The Clerk is DIRECTED to enter judgment for the VA.

SO ORDERED on August 25, 2022.

                                            s/ Holly A. Brady
                                            JUDGE HOLLY A. BRADY
                                            UNITED STATES DISTRICT COURT